People v Calvin Y. (2025 NY Slip Op 51383(U))

[*1]

People v Calvin Y.

2025 NY Slip Op 51383(U)

Decided on September 2, 2025

Criminal Court Of The City Of New York, New York County

Coleman, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 2, 2025
Criminal Court of the City of New York, New York County

The People of the State of New York, Plaintiff,

against
Calvin Y., Defendant.

CR-008119-25NY

Alvin L. Bragg, Jr., District Attorney, New York County (Davis Rosser of counsel), for plaintiff. 
Jeremy Saland, New York City, for defendant.

Ilona B. Coleman, J.

The defendant moves this court to find the People's statement of readiness invalid and to dismiss this case pursuant to CPL § 170.30 (1) (e). Here, it is uncontested that the People did not serve a certificate of compliance (COC), statement of readiness (SOR), or any discovery on the defendant or his attorney of record, Jeremy Saland, until one hundred days after the defendant's arraignment. The People argue in opposition that their COC and SOR, filed with the court eighty-seven days after the defendant's arraignment, were nevertheless valid because the People served them on a different attorney who had appeared at the defendant's arraignment.
On the facts of this case, the People's argument fails, and the defendant's motion to dismiss is therefore granted.
I. Relevant Facts
The defendant was arraigned in this case on March 9, 2025. On that date, Mr. Saland sent a letter to the court clerk stating that he had been retained to represent the defendant in this case. Another attorney, Kenneth Belkin, stood for Mr. Saland at the arraignment. Mr. Belkin submitted a notice of appearance, which indicated that he was appearing "for Jeremy Saland" and listed Mr. Saland's address, phone number, and email address.[FN1]
The case was then adjourned to court part D for conversion to April 16, 2025. 
On April 16, another attorney, listed in the court file as "Garber," stood for Mr. Saland. On that date, the People filed and served a supporting deposition but were not ready for trial. The case was then adjourned for trial to June 2, 2025. On June 2, Mr. Saland appeared, and the People again were not ready for trial. The case was adjourned for trial to July 16, 2025.
On June 3, 2025, off-calendar, the People emailed discovery to Mr. Belkin, including "witness interview notes, activity logs for seven officers, one 911 call and a radio run, law [*2]enforcement disclosures for seven officers, body-worn camera videos and meta data associated with the seven officers who responded, the DA datasheet, [] all police department paperwork," and "expert witness disclosures." They also filed a COC and SOR and served them contemporaneously on Mr. Belkin via email. Mr. Belkin did not respond.
On June 13, 2025, Mr. Saland emailed the People to inquire if they would consent to dismissal, as more than ninety days had passed without an SOR. The People responded immediately and provided him with the discovery, COC, and SOR. The People have not consented to dismissal. On July 14, 2025, defense moved, in writing, to dismiss pursuant to CPL § 30.30 and the People filed a motion in opposition on August 8, 2025.
II. Applicability of CPL § 245.50 (4) (c)
The People argue in opposition that CPL § 245.50 (4) (c) bars this court from considering the defendant's motion to dismiss. This subsection provides that "[c]hallenges to the validity of a [COC] . . . served on the defense and filed with the court . . . shall be addressed by motion within thirty-five days of the service of the certificate," and requires that such a motion must include an affirmation that the movant "timely conferred in good faith" with the opposing party and that efforts to resolve the issues raised were unsuccessful (CPL 245.50 [4] [c]). This argument is without merit for several reasons.
First, the new procedural requirements of the amended CPL § 245.50 (4) do not apply retroactively to motions, like the defendant's, that were filed before the new statute's effective date of August 7, 2025. As the Court of Appeals has explained, "[i]t is a fundamental canon of statutory construction that retroactive operation is not favored by courts and statutes will not be given such construction unless the language expressly or by necessary implication requires it" (People v Pastrana, 41 NY3d 23, 29 [2023] [quoting People v Galindo, 38 NY3d 199, 207 [2022]]). While the statute does apply "to all criminal actions pending on [August 7, 2025]" (2025 McKinney's Session Law News of NY, ch 56, part LL, § 8 [May 9, 2025]), its application to motions filed before its effective date is a wholly different question. The People's argument runs counter to New York's rules of statutory interpretation (see Editors' Notes, McKinney's Cons Laws of NY, Statutes § 55 ["it takes a clear expression of legislative intent to justify a retroactive application . . . so as to affect proceedings previously taken in [pending] actions"]), and its effect would be to nullify a huge number of potentially meritorious motions researched and drafted based on the law in effect at the time. Nothing in the language of the statute suggests that the legislature intended such a drastic result. Thus, the new procedural requirements contained in the amended CPL § 245.50 (4) do not apply to a COC challenge filed before August 7, 2025. 
Nevertheless, the defendant did in fact satisfy the statute. The defendant's motion was timely (see 2025 McKinney's Session Law News of NY, ch 56, part LL, § 8 [May 9, 2025] [ "[a]ny timeframes [] in this act regarding the time limitation to challenge a certificate of compliance shall run from the effective date of this act"]). Also, contrary to the People's assertion, the defendant's motion included an affirmation that met the requirements of CPL § 245.50 (4) (c). The statute only requires conferral sufficient to elicit the parties' respective positions in the dispute and to establish that a resolution could not be reached (see CPL 245.50 [4] [c]). The movant's affirmation need not parrot the language of the statute, and the conferral need not take any particular form (see id. ["the parties may confer informally, including but not limited to communication by email, telephone, or any other reasonable means"]). While the [*3]parties should try to resolve their disputes without litigation, the court cannot require either party to accept a "resolution" or "accommodation" that they consider unsatisfactory (id.). Thus, where the defense believes that they are entitled to dismissal and the prosecution offers only explanations for any discovery lapses and belated disclosure, the parties need not confer any more than what is needed to clarify the points of disagreement. 
Here, the defendant's affirmation states clearly that Mr. Saland contacted the People on June 16, 2025, and requested that the case be dismissed because of the People's failure to meet their discovery obligations. The People then responded that they erroneously served the discovery and related documents on a different attorney, which they believed to be a reasonable, good-faith error with no bearing on their readiness for trial. This email exchange was sufficient to clarify the issues raised in this motion and to reveal the unbridgeable divide in the parties' positions: the defendant will accept anything short of dismissal, and the People believe that dismissal is unwarranted. The defendant's affirmation thus made clear that the dispute was ripe for judicial resolution and therefore satisfied CPL § 245.50 (4) (c).
Overall, the People's assertion that CPL § 245.50 (4) (c) bars the defendant's motion is without merit, and the court will consider the merits of the motion in its entirety.
III. Validity of the People's Statement of Readiness
A valid statement of readiness requires "a communication of readiness by the People which appears on the trial court's record" (People v Kendzia, 64 NY2d 331, 337 [1985]), and it is "deemed effective at the time of filing" if "defense counsel is promptly notified" (People v Anderson, 252 AD2d 399, 400 [1st Dept 1998]). As of 2020, a valid statement of readiness also requires the People to have filed a valid COC (CPL 245.50 [3]; People v Bay, 41 NY3d 200, 209-210 [2023]). The defendant argues that the People's SOR was invalid both because the People did not promptly notify the defendant of their readiness (see, e.g., People v Telemaque, 43 Misc 3d 138[A] [App Term, 2d Dept 2014]), and because the People's COC was invalid (Bay, 41 NY3d at 210-215). The People respond that their errors should be excused in light of their good-faith efforts to comply with their obligations (People v Vaughn, 36 AD3d 434, 436 [1st Dept 2007]; CPL 245.50 [5]).
Though the analysis is different for the two arguments, the result is the same: the People have failed to meet their burden of demonstrating that they acted reasonably and with due diligence, and thus their COC and SOR are both invalid.
a. Prompt Notification
When the People file an off-calendar statement of readiness, they must also promptly notify the defense (Kendzia, 64 NY2d at 337; Anderson, 252 AD2d at 400). If the People do not promptly notify the defense, the statement of readiness is not effective until the defense receives actual notice of their statement (People v Bonilla, 94 AD3d 633, 634 [2d Dept 2012]). The People do not argue that the defendant received prompt notice, and indeed case law suggests that the thirteen-day delay at issue here was not prompt (see, e.g., Bonilla, 94 AD3d at 634 [fifteen-day delay was not prompt]; see also People v Collins, 186 Misc 2d 818, 821 [Crim Ct, Richmond County 2000] [holding that five-day delay was not prompt and suggesting that notice must be "nearly simultaneous[]" with filing]). 
Instead, the People rely on People v Nina, 291 AD2d 294 (1st Dept 2002), and People v Vaughn, 36 AD3d 434 (1st Dept 2007), which the People argue stand for the proposition that a good faith attempt to notify the defendant is sufficient even if it is ineffective (People's aff in opposition, p. 8). Nina and Vaughn, however, both addressed situations in which the People's efforts to notify the defendant were both in good faith and entirely reasonable. In Nina, for example, the People mailed their statement of readiness to an outdated address that defense counsel had included in his court filings (Nina, 291 AD2d at 295). Where the People's service is ineffective due to an unreasonable or unexplained error, however, their statement of readiness is not given legal effect (People v Telemaque, 43 Misc 3d 138[A] [App Term, 2d Dept 2014], People v. Dixon, 40 Misc 3d 1229(A) [Sup Ct, Kings County 2013], People v Rowe, 85 Misc 3d 1259[A] [Dist Ct, Nassau County 2025], People v Ramirez-Luna, 81 Misc 3d 1222[A] [Crim Ct, Queens County 2023], People v Chen, 78 Misc 3d 1212[A] [Crim Ct, Queens County 2023]), People v Morris, 63 Misc 3d 626 [Crim Ct, Bronx County 2018], People v. Stewart, 21 Misc 3d 1109[A] [Crim Ct, NY County 2008], People v Chittumuri, 189 Misc 2d 743, 745 [Crim Ct, Queens County 2001]). 
It is the People's burden to establish "reasonable explanation for the unreasonable delay in service" (Rowe, 85 Misc 3d at *3). Here, the People have failed to meet that burden. The People argue, essentially, that their mistake was reasonable because Mr. Belkin appeared at the defendant's arraignment, and because the Assistant District Attorney handling the arraignment listed "Belkin" as the defendant's attorney in the arraignment notes. Mr. Belkin, however, made clear in the notice of appearance he submitted to the court that he was appearing "for Jeremy Saland," and he listed Mr. Saland's address and contact information, not his own. The People have not established or even suggested that there was anything deceptive or erroneous about Mr. Belkin's actions that would have misled the People into believing he personally had been retained on this case. The People have a responsibility to accurately mark and update their files, and their failure to do so does not excuse the errors that result.
Further, it was unreasonable for the People to rely solely on an arraigning ADA's notation in light of the full procedural history of this case. The People had actual notice on April 16, 2025 and June 2, 2025 that Mr. Saland was the attorney of record. Most critically, Mr. Saland appeared in court on June 2 and stated on the record — in the presence of at least one ADA — that he was the attorney of record. This alone should have been sufficient to override any prior confusion that Mr. Belkin's appearance may have caused (Telemaque, 43 Misc 3d 138[A] at *2; see also People's opp at 8 ["actual notice of a new attorney of record would deem a Certificate of Readiness served upon the defendant's prior attorney illusory"]). Whether the specific ADA assigned to this case knew that Mr. Saland was the attorney of record is irrelevant: the New York County District's Attorney's Office had actual notice. At the very least, the rotating cast of attorneys in this case (Mr. Belkin at the arraignment, an attorney named Garber on April 16, 2025, and Mr. Saland himself on June 2) should have led the People to investigate which of them was the attorney of record. A quick glance at the court file would have cleared up any uncertainty. 
The court finds that the People's June 3, 2025 SOR was illusory. The People concede that they did not initially serve their SOR on Mr. Saland, and they do not argue that their subsequent service on June 16 was prompt. They also have not met their burden to show that the error was reasonable and in good faith (Rowe, 85 Misc 3d at *3). Instead, the records shows that despite actual and repeated notice that Mr. Saland was the defendant's attorney of record, the [*4]People, relying on an erroneous notation from the defendant's arraignment, instead served their SOR on an attorney who never officially represented the defendant. Their SOR was therefore illusory and ineffective to stop the speedy trial clock (Telemaque, 43 Misc 3d 138[A] at *2; see also Kendzia, 64 NY2d at 337, Bonilla, 94 AD3d at 634).
b. The People's COC
A COC will be found valid, despite any deficiencies, if the prosecution "exercised due diligence and acted in good faith in making reasonable inquiries and efforts to obtain and provide the [required] discovery" (CPL 245.50 [1]; see also People v Bay, 41 NY3d 200, 211 [2023], CPL 245.50 [6]). There is no question in this case that there were deficiencies in the People's discovery compliance: the defendant had not in fact received any discovery when the People filed their COC. Nevertheless, the People had made efforts to obtain and disclose discoverable materials. The question before this court is whether those efforts, evaluated holistically, constituted "due diligence" (CPL 245.50 [5]; Bay, 41 NY3d at 211). 
In theory, there is some question here whether the People's diligence should be evaluated under CPL § 245.50 (5) (a), which went into effect about two months after the People filed their COC, or under People v Bay, which interpreted the version of CPL § 245.50 in effect at the time of the filing (see People v Pastrana, 41 NY3d 23, 29 [2023]). In practice, though, this is a distinction without a difference. The prior version of the statute "nowhere define[d] due diligence," as the Court noted in Bay (41 NY3d at 211). Similarly, while the new statute provides a new non-exhaustive list of factors for courts to consider (see CPL 245.50 [5] [a]), the language of the statute makes clear that the ultimate question is still whether the People exercised "due diligence" (CPL 245.50 [5]). This court will not assume that the legislature meant to create a new, statute-specific definition for due diligence — which is, after all, "a familiar and flexible standard" (Bay, 41 NY3d at 211) — without a clear legislative statement to the contrary. 
While the specific language of CPL § 245.50 (5) (a) differs from the Court's language in Bay, the two lists of factors — both non-exhaustive by their own terms — are conceptually indistinguishable. Both Bay and CPL § 245.50 (5) (a) list as relevant factors the "efforts made by the prosecutor," "the volume of discovery" provided and outstanding, "the complexity of the case," "the explanation for any alleged discovery lapse," and the People's response when "apprised" of "missing discovery." Further, much of the new language in the statute provides specifics that were already clearly implicit in Bay's broader language (compare, e.g., CPL 245.50 [5] [c] [listing such factors as "whether the prosecution self-reported the error and took prompt remedial action"] with Bay, 41 NY3d at 212 [listing "efforts made by the prosecutor" as a factor]. Perhaps the most notable change is the statute's direction that courts consider "whether . . . delayed disclosure of discovery was prejudicial . . . or otherwise impeded the defense's ability to effectively investigate the case or prepare for trial" (CPL 245.50 [5] [a]). But importantly, prejudice is relevant to the inquiry only as it reflects on the People's diligence (see id.). Read through this lens, this factor requires courts to consider again the volume, importance, and usefulness to the defense of any missing discovery — considerations that were already present in Bay, either explicitly or implicitly (see 41 NY3d at 212 [listing "the volume of discovery . . . outstanding" and "how obvious any missing material would likely have been" as relevant factors]). This court thus concludes that CPL § 245.50 (5) (a) is a codification of Bay and will [*5]not engage in retroactivity analysis to determine which law is controlling.[FN2]
For the sake of consistency moving forward, this court will apply CPL § 245.50 (5) (a) even though the People's COC and the defendant's motion were filed before its effective date.
Here, considering all the factors listed in CPL § 245.50 (5) (a), the People have failed to establish that they exercised due diligence in their efforts "to obtain and provide" the required discovery to the defendant (CPL 245.50 [6] [emphasis added]). This is not an especially complex case, and the amount of discovery involved is minimal. The allegations include only a single incident with a single complainant. The case does not involve co-defendants, forensic analysis, search warrants, or a complicated police investigation. 
The People's description of their efforts to obtain and provide discovery is sparse and somewhat confounding. Though the People are required under CPL § 245.10 (1) (a) (ii) to provide initial discovery to the defendant within thirty-five days of the defendant's arraignment, their affirmation provides no indication that they had even requested discovery by that deadline, much less attempted to provide any discovery to the defendant. The People were aware at that point that their prosecution was viable, as they had already interviewed the complainant and obtained from her a signed supporting deposition. At some point — their affirmation does not say when — the People began to receive discovery. By May 20, 2025, the People had received the bulk of the discovery, and the assigned ADA emailed the Litigation Support Unit within the DA's Office "to obtain missing discovery items" (People's opp at 4). The People do not explain why they did not begin to disclose the discovery already in their possession on May 20 (see CPL 245.10 [1] [requiring disclosure "as soon as practicable"]). There is no legal or practical reason that the People should withhold discovery entirely until they are ready to file a COC, and in fact the practice runs contrary to the spirit of the statute (see id.). 
After the People obtained the last few items of discovery on May 30, 2025, on June 3, they attempted to serve the discovery in its entirety on the defendant. Unfortunately, the People provided the materials to the wrong attorney. As discussed above, the People's explanation for this lapse is insufficient. Despite actual and repeated notice that Mr. Saland was the defendant's attorney, the People, acting in reliance on an erroneous notation in their own records, provided the discovery to a different attorney who did not represent the defendant and was not part of Mr. Saland's law firm. As a result of this error, neither the defendant nor his attorney had access to a single piece of discovery at the time the People filed their certificate of compliance. The People did, however, promptly rectify their mistake after Mr. Saland contacted them to request dismissal.
On balance, the People's efforts fall short of "due diligence . . . in making reasonable inquiries and efforts to obtain and provide" discovery to the defendant (CPL 245.50 [6]). At the time the People filed their COC, no discovery had reached the defendant, and as a result he could not prepare for trial (see CPL 245.50 [5] [a]). While the People made adequate (though ill-defined on this record) efforts to obtain discoverable materials, their efforts to provide those materials to the defendant were insufficient (see id.). The People's prompt response when defense counsel contacted them is insufficient to outweigh the People's prior negligence. As a result, the People's COC was invalid, and their SOR was likewise illusory (Bay, 41 NY3d at [*6]204).
IV. CPL § 30.30
In this case, in which the defendant is charged with an A misdemeanor and no felonies, the People must be ready for trial within ninety days of the commencement of the criminal action (CPL 30.30 [1] [b]). The parties agree the People must be charged with the period from the defendant's arraignment on March 9, 2025 to the filing of the People's SOR on June 3, 2025, a period of eight-six days. Because the People's SOR was illusory, the speedy trial clock continued to run at least through June 16, 2025, when the People served their COC, SOR, and discovery on the defendant's attorney of record. The People therefore did not validly answer ready for trial within at least ninety-nine days, and the defendant was denied the right to a speedy trial (CPL 30.30 [1] [b]). The defendant's motion to dismiss is granted (CPL 170.30 [1] [e]).
This constitutes the decision and order of this court.
Dated: September 2, 2025
New York, NY
Ilona B. Coleman, J.C.C.

Footnotes

Footnote 1:Mr. Belkin and Mr. Saland are not part of the same law firm.

Footnote 2:The court's analysis of the retroactive application of the new procedural requirements (see section II, supra) does not apply to the substantive standard enacted in CPL § 245.50 (5) (a).